## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Reginald Q. Bell,

                    Petitioner,      Case No. 21-cv-12374

v.                              Judith E. Levy
                                      United States District Judge

Becky Carl,

                                      Mag. Judge Patricia T. Morris
                  Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner Reginald Q. Bell is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan. Following a jury trial in the Wayne County Circuit Court, he was convicted of armed robbery, Mich. Comp. Laws § 750.529, unlawful imprisonment, Mich. Comp. Laws § 750.349b, assault with a dangerous weapon (felonious assault), Mich. Comp. Laws § 750.82, and three counts of possession of a firearm

during the commission of a felony, second offense, Mich. Comp. Laws §
750.227b. (ECF No. 11-1.) In 2018, he was sentenced to 30 to 50 years
in prison on the armed robbery conviction, a concurrent term of 4 to 20
years in prison on the unlawful imprisonment conviction, a concurrent
term of 2 to 15 years in prison on the felonious assault conviction, and 5
years in prison on each of the felony firearm convictions, to be served
concurrently to each other but consecutively to the other sentences. (*Id.*)

In his pleadings, Petitioner raises claims concerning the
sufficiency of the evidence, the pre-trial identification procedures, the
admission of cell phone records, and the effectiveness of trial counsel.
(ECF No. 1, PageID.5–11.) For the reasons set forth, the Court denies
the petition for a writ of habeas corpus. The Court also denies a
certificate of appealability and denies Petitioner leave to proceed in
forma pauperis on appeal.

## II.   Background

Petitioner's convictions arise from his and a co-defendant's armed
robbery of a pharmacy and their confinement and assault upon the
pharmacy owner in Dearborn Heights, Michigan on January 27, 2018.

2

The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)), as follows:

> Malek Saad testified that a gunman entered his pharmacy and handed him a paper like it was a prescription, and then pointed the gun at him and ordered him to raise his hands. A second man, wearing a mask over his lower face, entered the store and physically attempted to force Saad to the ground, and then helped lift Saad by his clothing to a place near the safe, which Saad was ordered to unlock. The second man then physically forced Saad back to the ground. The gunman stood over Saad while the second man took narcotics from the safe and shelves of the pharmacy. Defendant's identity as the person assisting the gunman was established by Saad, who recognized defendant and identified him in court. Further, a forensic scientist determined that defendant's fingerprint was on the paper that the gunman handed to Saad. Additionally, defendant reported that a vehicle, which matched the vehicle that Saad witnessed leaving the scene of the robbery, was stolen from him on the day of the robbery. And a cell phone expert concluded that defendant used his phone near his home on the morning of the robbery, then in an area near the robbery around the time of the robbery, and then again near his home again after the robbery.

*People v. Bell*, No. 346238, 2020 WL 862603, at *1 (Mich. Ct. App. Feb. 20, 2020).

Following his convictions and sentencing, Petitioner filed an

appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id*. at *1–4. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Bell*, 506 Mich. 920 (2020).

Petitioner thereafter filed his federal habeas petition, which is dated September 18, 2021, and was docketed on September 20, 2021. (ECF No. 1.) He raises the following claims:

I. Evidence was insufficient to support the charge of felony firearm.

II. Suggestive identification.

III. [Petitioner's] cell phone records should have been excluded and deemed inadmissible.

IV. Counsel was ineffective for failing to object to identification admission and testimony based on illegally obtained cell phone records.

(*Id*. at PageID.5–11.)

Respondent filed an answer to the habeas petition contending that it should be denied because the second and third claims are

4

procedurally defaulted, and all of the claims lack merit. (ECF No. 10.)

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Id*. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)

6

(per curiam)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. Thus, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014). "[F]ederal judges

are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 578 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" (quoting *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam))); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the

8

merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002)).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner

may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, Respondent contends that Petitioner's second and third claims are barred by procedural default. The Court declines to address this defense. While a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal habeas courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although

10

procedural default often appears as a preliminary question, we may decide the merits first."). The Supreme Court has explained the rationale behind such a policy: "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Such is the case here. The procedural issue is complex and intertwined with the ineffective assistance of trial counsel claim, and the substantive claims are more readily decided on the merits. Accordingly, the Court will address the merits of Petitioner's claims.

## B. Merits

### i. *Sufficiency of the Evidence*

Petitioner first asserts that he is entitled to habeas relief because the prosecutor presented insufficient evidence to support his felony firearm convictions. (ECF No. 1, PageID.6.) Respondent contends that this claim lacks merit. (ECF No. 10, PageID.62.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The Court must defer to the factfinder at trial and the state court on appellate review if those determinations are reasonable. *Id.*

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal

habeas court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Rather, a federal habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Matthews*, 319 F.3d at 788.

Under Michigan law, the elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or attempt to commit, a felony offense. *People v. Bass*, 317 Mich. App. 241, 268–69 (2016) (quoting *People v. Avant*, 235 Mich. App. 499, 505 (1999)); Mich. Comp. Laws § 750.227b.

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offenses. *People v. Oliphant*, 399 Mich. 472, 489 (1976); *People v. Yost*, 278 Mich. App. 341, 356 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399–00 (2000), including the identity of the perpetrator, *Dell v. Straub*, 194 F.

Supp. 2d 629, 647 (E.D. Mich. 2002), and a defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997).

To convict a defendant under an aiding and abetting theory, a prosecutor must show that: "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended [to commit the crime] at the time he gave aid and encouragement." *People v. Carines*, 460 Mich. 750, 757–58 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 568–69 (1999)); *see also People v. Robinson*, 475 Mich. 1, 6 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67–68 (2004)); Mich. Comp. Laws § 767.39. "An aider and abettor's state of mind may be inferred from all the facts and circumstances," including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich. at 757–58 (quoting *Turner*, 213 Mich. App. at 568–69).

The Michigan Court of Appeals denied relief on Petitioner's

sufficiency of the evidence claim. The court explained in relevant part:

> "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Bass*, 317 Mich. App. 241, 268-269; 893 N.W.2d 140 (2016), quoting *People v. Avant*, 235 Mich. App. 499, 505; 597 N.W.2d 864 (1999). There was no evidence that defendant possessed a firearm during the robbery of the pharmacy, but defendant was convicted as an accomplice based on the gunman's possession of a firearm during the robbery.
>
> ***
>
> Accomplices to crimes may be prosecuted as if they committed the crime under the theory that they aided and abetted the crimes. *People v. Robinson*, 475 Mich. 1, 5-6; 715 N.W.2d 44 (2006). To convict a defendant of aiding and abetting felony-firearm, the prosecutor had to prove that "a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v. Moore*, 470 Mich. 56, 70-71; 679 N.W.2d 41 (2004).
>
> Defendant argues that there was no evidence that he "specifically encouraged the gunman to possess a gun during the commission of the felonies," particularly because there was no evidence that he said anything, and he did not

provoke, incite, or encourage the gunman to use a gun. A defendant's "mere presence" is not sufficient to establish that the defendant aided and abetted a crime, even where the defendant was aware that the crime was being committed. *People v. Norris*, 236 Mich. App. 411, 419-420; 600 N.W.2d 658 (1999). However, an accomplice's "state of mind may be inferred from all the facts and circumstances." *People v. Carines*, 460 Mich. 750, 758; 597 N.W.2d 130 (1999). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v. Kanaan*, 278 Mich. App. 594, 622; 751 N.W.2d 57 (2008).

In this case, the evidence establishes beyond a reasonable doubt that defendant "performed acts or gave encouragement that assisted in the commission of the felony-firearm violation[.]" *Moore*, 470 Mich. at 70. In *Moore*, the Court stated that one of the ways that a defendant "encouraged and assisted the principal's possession of the firearm [was] by specifically relying on that possession to intimidate his own robbery victim[.]" *Id.* at 71. Here, defendant's fingerprint was on the paper that the gunman used to distract Saad while he brandished his firearm. Defendant assisted in physically forcing Saad to the ground where the gunman could stand over him to keep Saad contained. Defendant physically assisted the gunman to move Saad to the location of the safe which Saad was forced to open in the presence of the gun. Defendant relied on the gunman's detainment of Saad with the weapon in order to have the opportunity to steal narcotics from the

16

safe and shelves. Thus, the evidence established that
defendant performed acts that assisted his partner in the
possession of a firearm during the commission of armed
robbery, unlawful imprisonment, and felonious assault.

*Bell*, 2020 WL 862603 at *1–2.

The state court's decision is neither contrary to Supreme Court
precedent nor an unreasonable application of federal law or the facts.
While there is no evidence that Petitioner was personally armed with a
gun during the crime, there was evidence that he aided and abetted his
co-defendant's possession of a firearm during the commission of the
three felonies. First, the fact that both perpetrators wore surgical
masks, (ECF No. 11-9, PageID.676 (Sept. 17, 2018 Trial Tr.)), and that
Petitioner's fingerprint was on the note the co-defendant gave to the
victim, (*id*. at PageID.675, 693, 727–728; ECF No. 11-10, PageID.759–
782 (Sept. 18, 2018 Trial Tr.)), shows his participation in the planning
of the robbery. Second, the victim's testimony describing Petitioner's
actions during the robbery, such as forcing the victim to the ground,
helping the co-defendant move the victim to the safe, making him open
the safe, and taking medications – all while the co-defendant was
armed with a gun and/or held the victim at gunpoint – shows that

17

Petitioner performed acts or gave encouragement to assist the co-defendant in committing the felony firearm offenses. (*See* ECF No. 11-9, PageID.674–703.) *See also Bell*, 2020 WL 862603 at *1–2. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (collecting cases). Such evidence and testimony, and reasonable inferences therefrom, establish Petitioner's guilt of the felony firearm offenses as an aider and abettor.

To the extent that Petitioner contests the Michigan Court of Appeals' interpretation of state law as to this issue, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief "does not lie for errors of state law". *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (quoting *Jeffers*, 497 U.S. at 780).

Additionally, to the extent that Petitioner challenges the credibility determinations and inferences the jury drew from the testimony at trial, he is not entitled to relief. It is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos*, 565 U.S. at 7; *Martin*, 280 F.3d at 618; *Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the felony firearm offenses. Habeas relief is not warranted on this claim.

ii.   *Pre-trial Identification Procedure*

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the victim's identification testimony,

which he claims was tainted by a suggestive pre-trial identification procedure. (ECF No. 1, PageID.7.) Respondent contends that this claim is procedurally defaulted and lacks merit. (ECF No. 10, PageID.71.)

Due process protects a defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). Due process thus requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977)). A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a substantial likelihood of misidentification. *Peterson v. Smith*, 510 F. App'x 356, 363 (6th Cir. 2013) (citing *Neil v. Biggers*, 409 U.S. 188 (1972); *Manson*, 432 U.S. at 107). The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v.*

20

*Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure was impermissibly suggestive. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). It is only after a defendant meets that burden that the court must require the State to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred." *Id.* If there is no substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *Id.* (quoting *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir. 1987)).

The Michigan Court of Appeals denied relief on this claim. The court explained:

> Identity of the defendant is an element of every offense. *People v. Yost*, 278 Mich. App. 341, 356; 749 N.W.2d 753 (2008). A defendant's due-process rights are violated by the use of an "unduly suggestive" identification procedure. *People v. Kurylczyk*, 443 Mich. 289, 302; 505 N.W.2d 528 (1993). A procedure used in lineup or photographic

identification is unduly suggestive in violation of due-process guarantees where it produces "a substantial likelihood of misidentification." *People v. McDade*, 301 Mich. App. 343, 357; 836 N.W.2d 266 (2013).

In this case, Detective Shaun Pawlus spoke with Saad while delivering a subpoena for the preliminary examination, after defendant's arrest, and disclosed defendant's identity in response to Saad's question. Saad explained that he was curious about whether defendant had been a pharmacy customer, and found in his computer system that defendant had filled prescriptions in December 2017 and January 2018, including shortly before the robbery. Saad testified that the man who came in after the gunman was a taller, African-American male who was wearing a mask. Saad identified this individual in court, by name, as defendant. Saad noted that he could see defendant's upper facial features during the robbery. He said that he recalled defendant's appearance from his memory of the robbery, and not as a customer, because of the traumatic situation and his upper face features. Saad confirmed that he had seen defendant's face when he walked in, when he came around the corner of the counter, and when he was taking medicine off of the shelf.

Defendant argues that Detective Pawlus' disclosure of his name to Saad was an unduly suggestive identification procedure. However, the police did not ask Saad to identify defendant in any type of lineup. Rather, Saad identified defendant at trial based on his interactions with him during the robbery. There was no evidence that defendant based his identification in court on any other information. We note

22

that it would be difficult to prevent testifying witnesses in criminal cases from learning the name of the defendant. However, knowing a defendant's name would not provide a basis to identify the person at the defendant's table as the perpetrator of a crime. Where a witness does not identify a defendant in a lineup, the witness's in-court identification is "a credibility issue that [is] properly before the jury to determine." *People v. Barclay*, 208 Mich. App. 670, 675-676; 528 N.W.2d 842 (1995). Since there was not an unduly suggestive identification procedure such that there was a substantial likelihood of misidentification, it did not implicate due process concerns. *See McDade*, 301 Mich. App. at 357.

*Bell*, 2020 WL 862603, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The police provision of Petitioner's name, done at the victim's request to see if Petitioner was a pharmacy customer, (*see* ECF No. 11-9, PageID.698–699), was not unduly suggestive given that the police did not show the victim any photographs, did not conduct a pre-trial lineup, and did not otherwise ask the victim to identify Petitioner as the perpetrator before the preliminary examination and the trial. Additionally, even if the officer had not given the victim the Petitioner's

name, the victim would have discovered it at the time of the preliminary examination and the trial.

Nonetheless, even if the procedure was suggestive, the victim's identification of Petitioner at trial was sufficiently reliable. At trial, the victim identified Petitioner as the second man involved in the robbery, indicated that his identification of Petitioner as one of the perpetrators was based upon his partial view of his face and his recollection of the incident, and stated that while Petitioner had filled two prescriptions at the pharmacy before the robbery, he did not remember him from those transactions, but remembered him from the robbery because it was a traumatic event. (*Id.* at PageID.676–677, 681–682, 702–703.) Petitioner fails to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### iii. *Cell Phone Records*

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting his cell phone records, which he claims were obtained in violation of his Fourth Amendment rights. (ECF No. 1, PageID.8.) Respondent contends that this claim is

24

procedurally defaulted and is not cognizable. (ECF No. 10, PageID.87.)

The Michigan Court of Appeals denied relief on this claim. The court explained:

> The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures and provides that no warrants shall issue without probable cause. U.S. Const., Am IV. The Michigan constitutional provision is substantially the same. Const. 1963, art. 1, § 11. The exclusionary rule, with several exceptions, bars the introduction into evidence of materials seized and observations made during an unconstitutional search. *People v. Hawkins*, 468 Mich. 488, 498-499; 668 N.W.2d 602 (2003). Evidence obtained subsequent to, but as the result of, an unlawful search is to be excluded from evidence as "fruit of the poisonous tree." *People v. Reese*, 281 Mich. App. 290, 295; 761 N.W.2d 405 (2008), quoting *Wong Sun v. United States*, 371 U.S. 471, 487-488; 83 S. Ct. 407; 9 L. Ed. 2d 441 (1963).
>
> Here, Detective Pawlus testified that he obtained a search warrant for an extraction of the phone contents, and then asked for the help of the Federal Bureau of Investigation to analyze the call log. It was then determined that on the day of the robbery defendant made calls from the area of the robbery, at the time of the robbery. While an individual has a "legitimate expectation of privacy in the record of his physical movements" recorded in cellphone location data records, *Carpenter v. United States*, [585 U.S. 296, 309–310]; 138 S. Ct. 2206, 2217; 201 L. Ed. 2d 507 (2018), and generally the government must obtain a search warrant in

order to examine the contents of an individual's phone, *Riley v. California*, 573 U.S. 373, 401; 134 S. Ct. 2473; 189 L. Ed. 2d 430 (2014), there was evidence presented that a search warrant had been obtained in order to examine defendant's cellphone records. Thus, defendant's claim is without merit.

*Bell*, 2020 WL 862603, at *3–4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by a failure of the State's corrective process. *See Stone v. Powell*, 428 U.S. 465, 494–95 (1976).

A court must perform two distinct inquiries when determining whether a petitioner may raise an illegal arrest claim in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of

that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93–94 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509–10 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this claim only if he shows that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner makes no such showing. To the contrary, he had the opportunity to raise this issue in a suppression motion before the state trial court, and he raised the claim on direct appeal in the state courts and was denied relief. *See Bell*, 2020 WL 862603, at *3–4. His Fourth

27

Amendment claim is thus not cognizable on federal habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted on this claim.

> iv.    *Effectiveness of Trial Counsel*

Lastly, Petitioner asserts that he is entitled to habeas relief because "[trial] counsel was ineffective for failing to object to identification admission and testimony based on illegally obtained cell phone records." (ECF No. 1, PageID.10.) Respondent contends that these claims lack merit. (ECF No. 10, PageID.92.)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. *Id.* at 687. This requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [] by the Sixth Amendment." *Id.* Second, the petitioner must establish that counsel's

deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*; *Hargrove v. Morris*, 996 F.2d 1452 (6th Cir. 1992).

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Washington*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.*

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is one that is sufficient to undermine confidence in the outcome [of the proceeding]." *Id.* On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on these claims, ruling that Petitioner failed to show that trial counsel was ineffective because the underlying claims lacked merit. The court stated in relevant part:

> Similarly, since there was no basis on which to exclude
> Saad's in-court identification of defendant, and "[f]ailing to

advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *Ericksen*, 288 Mich. App. at 201, defendant has not established this claim.

***

Similarly, defendant's trial counsel was not ineffective for failing to attempt to exclude the admission of testimony based on the phone records because counsel was not required to raise a meritless argument. *See Ericksen*, 288 Mich. App. at 201.

*Bell*, 2020 WL 862603, at *3–4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' ruling (and this Court's ruling in part) that the underlying claims lack merit, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner fails to establish that trial counsel was

31

ineffective. Thus, habeas relief is not warranted on these claims.

## V.    Conclusion

For the reasons set forth above, the Court concludes that Petitioner's habeas claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court DENIES and DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus. (ECF No. 1.)

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner

makes no such showing. Accordingly, the Court DENIES a certificate of appealability.

The Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court DENIES Petitioner leave to proceed in forma pauperis on appeal. This case is closed.

IT IS SO ORDERED.

Dated: August 12, 2024
     Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2024.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager